# Modern Woodmen of America
## v.
## Bessie Sutton, by Next Friend, etc.

*Insurance—Mutual Benefit Associations—Alleged Misrepresentation in Application as Defense—Instructions—Weight of Evidence—When Representations in Application to be Considered as Taking Effect.*

1. The evidence presented in the case at bar was sufficient to justify the finding of the jury that the statements made in the application, upon which was issued the certificate sued on, were neither false nor fraudulent.

2. The application was made on April 3d, and the certificate issued April 12th, and delivered to the beneficiary on April 17th: *Held*, That it is unnecessary to determine as of what day the truth of the statements in the application are to be tested, the answer having set up the defense that they were false when made, on April 3d, and the issues, framed by the court without objection, also referring to that date.

[Opinion filed November 5, 1890.]

Appeal from the Circuit Court of Sangamon County; the Hon. J. A. Creighton, Judge, presiding.

Messrs. Gross & Broadwell, for appellant.

Messrs. J. C. Snigg and Conkling & Grout, for appellee.

Pleasants, J.   Appellant is a corporation under the benefit association laws of this State.   William M. Sutton, father of appellee, held its certificate of his membership for $2,000, payable to her at his death, upon the conditions indorsed. His application therefor, through the local camp at Springfield, dated April 3, 1888, stated, among other things, that he was not nor had ever been subject to cancer or syphilis.   Under the routine of its transmission to various officers of the head camp in Northern Illinois for examination and approval, the certificate was not issued until the 12th nor delivered by the local camp to the applicant until the 17th of the same month. The conditions indorsed recited that it was issued in consideration of the representations and agreements contained in the application, and should be void if they should be found in any respect untrue.

Sutton died December 20, 1888.   According to the proof of death furnished by appellee, the sworn certificate of his medical attendant, the cause was secondary syphilis.   Appellant refused to pay the $2,000 benefit, and the bill herein was filed to enforce its assessment, collection and payment.   The defense set up in the answer was that when he made his application, Sutton in fact was or theretofore had been afflicted with both the disorders mentioned, as he well knew; that his statement therein to the contrary was made with intent to deceive the defendant, and such members of the organization as should survive him, and that the immediate cause of his death was secondary syphilis.   Upon these averments issues were framed and sent for trial to a jury, who returned findings upon special interrogatories submitted, to the effect that Sutton did not obtain his certificate by wilful misrepresentation; that when he made his application he did not then know that he then was or had been afflicted with either cancer or syphilis; that in fact he was not then nor had been so afflicted; that his answers, in his application, to the questions relating to these diseases or disorders, were truthfully made and true in fact, and that he died of cancer; upon these findings the court entered a decree according to the prayer of the bill.

Appellant here insists that they were not sufficiently sup-

ported by the evidence, and for that reason ought to have been set aside upon its motion. As to the issues so made, the burden of proof was upon the defendant. Continental Life Ins. Co. v. Rogers, 119 Ill. 485–6. On its behalf Dr. Wohlgemuth testified that in 1885 he treated Sutton professionally for about seven weeks; that his disorder was secondary syphilis, manifested by chancre on the tongue and other indications stated, which left no doubt in the mind of the witness; that he told him his opinion and that when he ceased to treat him he was not cured and was much discouraged. Dr. Davis thought he saw him in February or March, 1888, on the street or about the capitol, where he was a watchman; that he then complained of sore throat, looked badly and had a muffler around his neck. But this was only a casual meeting. The witness never examined him or saw him professionally. Dr. Fowler attended him from about the 21st of October, 1888, until his death, and made the sworn certificate of its cause before referred to. He was clearly of opinion that it was secondary syphilis. This evidence, of itself, certainly justified the defendant in refusing to pay the claim of complainant.

But on the other hand Dr. Kerr testified that he treated him in July and again in November, 1886, for different disorders, neither of which was syphilis, but each of a character making it important with reference to the treatment to know whether he had ever had syphilis; that he discovered no indication of it, and on inquiry was assured by him that he had never had it. This witness was the medical examiner for appellant when Sutton applied for membership. He then examined him carefully, among other particulars, his tongue, and sub-maxillary and parotid glands, for signs of scrofulous affection, and found no indication of local or constitutional disease, present or past, but every appearance of perfect health. Several members of the camp testified to such appearance at that time and thereon until after his admission. Dr. Matthews treated him in February, 1888, for a broken arm. The limb was kept in splints for five weeks, until the 18th of March. He then complained of nothing else, and the doctor

looked for nothing else, but with that exception his physical condition, so far as he observed, appeared to be good. About three weeks after the removal of the splints, Sutton complained to him of trouble on his tongue, which he attributed to an old tooth, and was advised to have it taken out. About three weeks later Sutton told him that the tooth had been taken out but the pain remained. The doctor then made an examination and discovered what he took to be epithelial cancer, an enlargement of the part, a protuberance or thickened lump as large as a good sized hazel nut. On the 26th of June, by which time it had grown to the size of a pigeon's egg, he removed the diseased part by a surgical operation. In August he removed another portion, and continued to treat him, constitutionally, but without hope, until October, when he gave up the case and Dr. Fowler took charge of it as before stated. Dr. Matthews never observed anything which to his mind indicated syphilis, and entertained no doubt that it was cancer. He was also of opinion that it was developed no earlier than the first of April, and might have been somewhat later. Dr. Townshend assisted Dr. Matthews in the first operation, examined the tongue and the excised portion after its excision, and pronounced it cancer and not syphilis Every one of these medical gentlemen had been in practice for many years, and claimed a considerable experience in the treatment of both the disorders named. The reasons for their respective opinions were fully stated on the trial, and have been forcibly presented in argument here. It would be useless for us to undertake the task of weighing and balancing them. Hence only so much of the evidence has been set forth as seemed to us sufficient to show there was a substantial conflict; that however it may appear from the bare record, the seeing and hearing the witnesses was a material advantage in determining on which side the fact or the preponderance of proof really was; and that we could not well charge a finding either way to passion, prejudice or misunderstanding.

It is claimed the jury were misdirected by the court upon one point that was important. As already stated the application was subscribed and dated on the 3d of April, but the

certificate was not issued until the 12th, nor delivered to the applicant directly until the 17th.   Counsel insist that the contract of appellant did not take effect until it was so delivered, and that since it was based on the statement in the application, that statement is to be regarded as continuing and made on the 17th, no less than on the 3d.   Dr. Matthews could not definitely fix the time when he discovered the supposed cancer.   It might have been on the 29th of April, six weeks from March 18th, or somewhat earlier or later; and the argument is that if the diseased lump was sixty days or thereabouts, in growing from the size of a hazelnut to that of a pigeon's egg, it probably required more time than from the 17th to the 29th to attain that of a hazelnut; and if it did, then Sutton had cancer; it was cancer before the contract took effect, and his statement, treated as of the 17th, was false. But the court instructed the jury that it was to be treated as of the 3d, and that the question as to its truth related to that time; thereby allowing twenty-six instead of twelve days for the growth of the cancerous formation to the size of a hazelnut, consistently with the truth of the statement in the application.

Of course Sutton could not state on the 3d, his physical condition on the 17th.   His statement of it was expressly limited to the past and present.   Nor did it contain any warranty, covenant or representation with respect to the future, or by itself imply any such representation, but expressly excluded it.   Whether the certificate took effect on the 12th, when it was in fact issued by the head camp and sent to the local camp, as we understand, merely for registration and delivery, or not until it was actually delivered to Sutton, we think it unimportant to determine.   In either case it might have been issued or delivered upon consideration that the statement in the application was true on the 3d, and upon trust of appellant, at its own risk and without any further representation by him, that the fact continued to be as then stated, which was also the legal presumption.   Sutton was not responsible for the delay of issuance or delivery, nor does it appear that he expected or had reason to expect it.   But were

it conceded that his acceptance of the certificate at any time after he came to know or have reason to suppose he had cancer or syphilis, without making it known to appellant, would have been fraudulent and the certificate therefore void in his hands, that is not the case set up in the answer, nor is there any evidence that there was in fact any such change in his condition between the 3d and the 12th, or 17th, but only an argument, from facts by no means conclusive, that there may have been.

The averments in the answer, in respect to the time, are "that said William M. Sutton, * * * in his said application," and "in his said medical examination by and before the physician selected for that purpose" and "when said Sutton filled out said application," falsely answered, stated and certified, etc. These averments certainly fix the time in question as the 3d day of April. There is nothing in the answer which applies in this connection to the period or any part of the period during which the application was pending. The issues framed by the court, without objection on the part of the defendant, fixed the time to which the inquiry was directed, in the language of the answer. The special questions of fact submitted to the jury, of which there were ten, all in substantially the same manner related to the date of the application.

The instruction complained of, therefore, added nothing to the information of the jury, and was right. Clearly the defendant's case as alleged was, that the statement in the application was false when it was signed; that Sutton then was or had been afflicted with cancer or syphilis, and then knew it. It rested, for proof, almost wholly upon the testimony of Dr. Wohlgemuth, which related to the year 1885. Without that it would hardly be contended that there was any proof whatever of either disorder before the certificate was delivered. Dr. Fowler knew nothing of the case until late in October, 1888. Surely, the fact that Sutton wore a muffler around his neck, and said he had a sore throat, in February or March, afforded no ground for suspicion of cancer or of chancre on the tongue. The jury must have believed that Dr. Wohlgemuth was mistaken in his diagnosis, as they might from the fact

that though Sutton was not cured of the disorder he had in 1885, whatever it was, there was no indication of syphilis discovered about him. past or present, from the time Dr. Kerr examined him in 1886 until some time after his admission into the order, if ever. Secondary syphilis, resisting active treatment for seven weeks and then submitted to in discouragement, is not apt to be so obscure for so long a time, and cancer would still more certainly have shown itself.

The finding that Sutton's statement was not false when made relieves us from the necessity of deciding whether it was a warranty or only a representation. While the case is not altogether one-sided, we think it such as makes the findings of the court based upon the verdict of a fair jury conclusive.

